The first case that we have for argument is United States v. Mullins and it is DACA 247003. Counsel, Ms. Donnelly, when you're ready to make your argument, we'll be pleased to hear it. Thank you, Your Honors. Good morning. My name is Katayoun Donnelly and I represent the appellant, Mr. Mullins, in this case. Mr. Mullins has raised three questions of law in this appeal. First, did the trial court violate the Jury Act? Second, did the trial court err in its legal conclusion that the physical presence of the prosecutor is necessary to trigger the protections of Rule 410A4 of Rules of Federal Evidence? And the third question is, did the trial court err in its legal conclusion that release of correspondence between former defense counsel and the government from the defendant's client file is subject to non-disclosure under the Federal Rules of Criminal Procedure 16? As a sub part of that question, there is the issue of whether, as a matter of law, the government could ever meet the good cause requirement where the client file, at the very least, could be released for the eyes of the current attorney. So the first question, the Jury Act, we had very interesting facts in this case. Before the jury selection started in this case, the attorney and the criminal defendant noticed the absence of any members of the Indian American population, which is about the population of 140,000 in the Eastern District of Oklahoma. And interestingly enough, by contrast, they noticed that there are seven members of the citizens from the small town that the alleged crime had occurred in Ida, Oklahoma, out of the 49 jury members. And when they compared the two, the absence of any members of the Indian American community or the Black community, by contrast… Counsel, did you file an affidavit? Yes, Your Honor. So within seven days of that discovery, the Defense Counsel filed a written motion. The issue was raised orally that same day, but that is not significant because the statute 1867 and 1861 that are the subject of this argument. The requirement for the affidavit is met when it is filed with the court within seven days of the discovery. Are you saying you did file an affidavit, a sworn affidavit, setting forth the reasons for your allegations? Correct, Your Honor. The trial counsel, I was not the trial counsel if you're asking me personally, but the trial counsel did file an affidavit that was attached to the written motion. You're sure it was a sworn statement? The way that you're asking me, Your Honor, I'm going to doubt myself, so I'm going to have to look back. And I will, of course, get back to the court if I have made a mistake. My understanding has been that there was no dispute that the argument that the government has raised was the timeliness. It was not that the other requirements were not met. If I'm mistaken, I'm sure that Mr. Flanagan is going to correct me. But assuming that I am correct, that the requirements were met in the written filing that the defense counsel submitted to the court, then the only issue, the main issue here is that under the Jury Act, my client had a right to a hearing. The act is very specific. As long as you have the showing of the grounds, it triggers a requirement for a hearing. So you can have the testimony from the people involved with the jury commissioner to come and testify. You can present additional evidence. And as you see in the record, the trial counsel actually was very specific about the use of a statistician. And then they said that we want to bring in our expert to show why these numbers are impossible. But they were flat out thrown out. And there was never a hearing held. And that is what you're asking for, that that was a reversible error. The Supreme Court of the United States and test has been very specific. This court in Lawson has filed has followed test that when the when a timely request has been made following the requirements of the act, that the granting of that hearing is automatic. There is no discretion. Well, it's your obligation, isn't it? Counsel, when you filed the motion to strictly comply, not just with the timeliness issue, which the court did find it untimely, but with the substantive requirements of the act, which I believe requires counsel to file a factual statement, an affidavit that that actually swears that there's a factual basis that shows the substantial failure to comply here. As I understand it, your affidavit simply recited that they had visually observed. That they believe there weren't any Native Americans or African-Americans on the panel. And and but it didn't cite any statistical evidence or any other real substantive information about the, you know, the number of, for instance, African-Americans and Native Americans in comparison to the number in the county or anything else. It was just the visual observations, wasn't it? Your Honor, the visual observation was during the day that the jury was being selected. But all those numbers were submitted in the written in the written. What numbers? What numbers were submitted in the initial motion? Yes, Your Honor. So that was submitted attached. They attached the the table that we have included in our briefing that had all the numbers. So I had the numbers that I took that included in my briefing. They all came from the affidavit in the record and the record citation is there. What numbers are you referring to? I'm going to refer the court to page 10 of the opening brief. So, OK, I understand. And that takes you to. I don't have that in front of me, but yeah, that takes you to volume one. I apologize. Am I interrupting you? What did these numbers show is what I'm asking you. They showed exactly what I was describing to the court that you have. They hold the population in Eastern District of Oklahoma is over 700000 people, about hundred and forty thousand of them Native American. Yet you had the allegation was that there was zero Native American out of the hundred and forty thousand. And in comparison, you had 17000 people in Idaho, Oklahoma. And out of that 17000, there were seven people present from the venue where the crime had occurred. That was a part of the affidavit submitted. And that is the triggering point for the application of the act, the strict application and the requirement for a hearing. So the second issue, your honors, I would like to start by the fact that we have a disagreement as to the standard of review. This court in Browning in 2001 decided not to reach that question as to what the standard of review is. We are asking the court to address it now. We have addressed that in our briefing. We are asking the court to apply the de novo review. The government is asking for the harness error analysis. And, you know, aside from that, sorry, the clear error analysis as to the merits of the question. Again, we have this bizarre interpretation of 410. Even though we have that this at least we have the Second Circuit in Suriname, we have the Eighth Circuit in Macaulay. And I cite that 715 F3D 1119 at 1125 and 26. Both of the circuits that have reached this question, there has never been an issue as long as you have the participation and involvement of the prosecution. The argument here that because the prosecutor was in a separate car following my clients is is one of the most interesting arguments I've seen in case law. You mentioned Serna. I mean, Serna, it seems to be the case you're relying on the Second Circuit case, but that case wasn't anything like this. And the fact that there the prosecutor made specific statements, as I'm recalling to to the defendant that his statements would not be used against him. And then this DEA agent followed up with questions. And and the prosecutor specifically authorized the agent who was asking questions in Serna to discern the sincerity of of the defendant. So he gave him authority. Essentially, there's just no facts like that in this case. Well, your honor, the key point is not whether the promise was made. 410 does not require a promise. What it requires is that you are in active negotiations, that there is a participation of the prosecution. You are engaged in the plea negotiation. And as a result of that, the negotiation process, you are providing a statement. And that's what happens. So it's absolutely irrelevant that in Serna there was a specific promise. That's not the requirement of 410. And as I mentioned, you know, I'm also citing the rule itself. The rule itself says that the statements are made during plea discussions with with an attorney for the prosecuting authority plea discussions with. That certainly, at least in some cases, seem to indicate that if the prosecutor needs to be present, the statements are made with that prosecutor present. Or at the very least, there's something like there is in Serna where there's some connection between the prosecutor's negotiations and the agent who follows up. And that's what I'm saying seems to be lacking here. And that would be your honor. That is my question. So how could it be lacking? You have literally the prosecutor in the car following the defendant. How could there be any lacking of a connection when you have two cars following each other, following the defendant who's making the statement as to where to go? And that could a defendant take the authorities to a body without plea negotiations? I apologize. I couldn't hear you. Well, could a defendant in a given case, simply have remorse and say, I'm going to take it to the body without their having the negotiations. If they're out of their mind in a criminal prosecution, perhaps your honor, but which defendant represented by counsel who's which counsel would tell the defendant, please go ahead and do this. Well, not get anything in exchange. A counsel who's trying to avoid the death penalty. Exactly. So that is exactly your honor. You just answered the question, which is this was in exchange to dropping the death penalty. This was a part of a plea negotiation to drop the death penalty. Otherwise, which counsel in their right mind could could tell the criminal defendant, you go ahead and deliver what the prosecution is asking you and not get anything in exchange. That would have been an effective assistance of counsel per se. And as the harmfulness again, we have cited the case law from the Supreme Court is very clear that this could never be a harmless error because of the fact that in Harrison, the Supreme Court explains. I mean, this forced the defendant, Mr. Mullins to testify in the second trial. If the trial court had not suppressed this information that would have granted the motion to suppress this information, Mr. Mullins would not have been forced to testify. He was forced. And therefore, this court should reverse the decision not to suppress. Well, you argue, I think, in your brief that the discovery issue is de novo. Do you have any authority to support that statement? Yes, Your Honor. So this is not necessarily the discovery issue that de novo. If I'm if I'm understanding the question correctly, the de novo versus clear error was addressed in Browning and the court in Browning actually acknowledge that there are different circuits, different courts that have addressed this and have gone in different ways. And so the authority is there, at least based on Browning itself. The decision of the Eighth Circuit says that is a mixed question of law. In fact, we ordinarily reviewed de novo, a district court's determination that a statement was given in the course of a plea negotiation. And that's what we're asking the court to do. If I may, I would like to reserve the remainder of my time. Very well. Thank you. Mr. Flanagan. May it please the court, Patrick Flanagan on behalf of the United States. The United States is asking that the judgment and sentence against Mr. Mullins be affirmed. The court's orders regarding the Jury Selection and Service Act, the rule 410A4 analysis, and the court's order on the communications with Mr. Gifford and not Mr. Adams were all correct within the court's authority. And the judgment and conviction against Mr. Mullins in this case should not be overturned. Going first to the defense's argument regarding what I'm going to call the Jury Act, rather than the Jury Selection and Service Act or in this argument, the defendant didn't comply with the requirements of 28 USC 1867. What that requires is prior to the veneer, or within seven days of when they could have discovered, whichever is earlier emotion has to be accompanied by a sworn statement. In this case, it was not prior to the veneer there was no motion and sworn statement received by the defendant pursuant to the jury act. It was only after veneer six days, three days after the verdict was returned, they have reported sworn statement was entered with a renewed motion regarding defense counsel. There was an initial motion that was not supported with an affidavit. Is that right. Yes, there was an initial oral objection on the day of jury selection. Motion. Yeah, I guess I was getting confused about that there was no support for that one. Correct, Your Honor, and would it have been timely it's not being challenged on appeal. Right. Not to my, my read of defenses argument was that the objection restarted the clock for them. And that's just not the case. Under the law, it's not one motion, it's has to be made in a company before the veneer. Okay. And the reason for that is, is a good one because the jury act doesn't attack individual juries, it attacks the fundamental process in a district by which juries are picked test was very specific in that, in that case, before the veneer. After grand jury but before jury selection test actually filed a motion supported by a sworn statement in which he claimed that the process by which the grand jury was picked any process by which the pedigree would be picked excluded disproportionate numbers of people with Spanish surnames students and African Americans, and attached to that was an affidavit stating facts that had been disclosed in testimony in another case. It was after that filing and compliance with the procedure that the US Supreme Court said okay you're entitled to this, you're entitled to this evidentiary hearing that posture simply isn't present here. The requirements of the jury act set the time as no later than denier, and the defendant in this case was later than bernard when they raised that notwithstanding the untimeliness judge Goodwin and reviewed the motion made findings, determined that the failure wasn't substantial, and they got the defendant hadn't established relief. He could have denied the motion and the oral objection prior to an ire by its non compliance by not containing a sworn statement but he didn't get to it on that grounds. He judged on the defendants oral statements of. There are too many people from Ada, and we don't recognize any Native Americans. It wasn't an even when they did make the written motion and sworn statement. It wasn't that they weren't Native Americans, it's that his argument was well we didn't recognize them. That simply isn't sufficient. And the courts order on the jury act should be affirmed. A failure is substantial when it frustrates one of the three principles underlying at the act. First, the random selection of jurors to the calling of the jury from a fair cross section of the community, and three determination of disqualification exemptions and exclusions based on objective criteria. The district court did that with its order, even after finding it was untimely. So there were multiple grounds on which the defendants motion was denied and those were correct. Moving on to the analysis of what should have defense arguments regarding federal rule of evidence for 10 a for defense counsel's laboring under a misapprehension of the facts, it was not, there was no evidence introduced and no finding it was only a two car convoy. In fact, the testimony that was presented that wasn't disputed was it was between 10 and 15 cars. So, the idea that he's in a training car. There's a factual disparity with the testimony, notwithstanding the district court evaluated whether didn't actually make a determination because there was a dispute of facts of whether plea negotiations has had begun a da Ross or former ad former da Ross testified there was not plea negotiation. Former defense attorney Frank stout testified there was rather than resolve, who the court found more credible. The court said, even assuming the defendants version of events is true. These should not have been excluded for 10 is not a constitutional right, it is a right that has been delineated by Congress to encourage plea negotiation. It is very clear on its dictates different districts have extended that beyond when there are clear designations of authority by an attorney, but there was no evidence of that here to the law enforcement agents, the defendant led to the body of the reasonable. The district court did not air by allowing in the statement that the defendant led police to the body of Rachel widow. Additionally, Defense Council has tried to extend the 410 a for prohibition to what they're arguing are fruits of the poisonous tree, and that just hasn't happened in a civilian court. That that extends the statutory prohibition on comments far beyond what Congress apprehended and the civilian courts that have evaluated it have pretty consistently said that that it would be for Congress to extend it that far, not the court. This isn't a constitutional argument under 410. It is a statutory construction. The one military court which did construe that actually construed it in part, at least, because a civilian attorney disclosed attorney client privilege material, and then it was the identity of a witness. So, I would submit that that's a case of bad facts getting bad law. But in addition, it's a military court with a different version of 410 than what's present here. So, the evidence derived even excluding assuming for purposes of argument, the defendant was correct that the statements on April on or about April 21 of 2002 should have been excluded. All the evidence that was derived should have been included under Rule 410 a for and that evidence was substantial significant the body the DNA evidence that was recovered the shell casings the opinions of the medical examiner. Even beyond that, the statements the defendant made to Special Agent Craig over be after his conviction from the state could not fall under a 10 for, excuse me, Rule 410 a for is, at that point the defendant had already been sentenced was already facing a sentence, and there is no evidence that Special Agent Craig over be was authorized to negotiate a plea deal on a closed case. So that statement would have come in, regardless, and wasn't covered by this prohibition, and in that statement the defendant stated that he made the correct moral decision, but a poor legal one to lead police to the body of the victim in this case. With that, that leads kind of into the harmless error analysis of the 410 evidence in that the government submits there was sufficient evidence, regardless of whether the April 21 statement of who led police the body of Rachel would all came in, because you had Special Agent Craig over be who was able to testify about it was properly admitted, you had all the physical evidence and the derivatives from finding the body, and notwithstanding you had all the evidence that preceded finding the body, the evidence in the defendant's trunk, the evidence in the defendant's home, the defendant's possession of the victim's diary in his home, his false exculpatory statements, his minimal injuries, his attempt to conceal his involvement by calling the then boyfriend and mother of the victim, and also the testimony of Miss Chadwick James who was able to establish by her testimony, the defendant repeatedly asking whether the victim's roommate was going to be present. The testimony of the eyewitness that contrary to the defendant's claim placed him at the victim's home at 330 in the morning on April 20 of 2002. So all of this evidence was in, and the jury would have heard it so notwithstanding whether there was some error in letting in the April 21 statement that he let defendant led police the body of Rachel would all there was sufficient evidence to find him guilty. And that doesn't even discount the testimony the defendant gave. Getting to the defendant's argument on Harrison, Harrison is different. Harrison involved confessions that were obtained unlawfully is a violation of a constitutional right, not like here where there's a statutory construction. So in that instance, there were three confessions in the prior trial that were admitted. There was also I believe a statement made in opening that the defendant was not going to testify, but after those confessions were admitted, he did in fact testify in that first trial. And when the first trial was overturned, and they went into the second trial, and his testimony was admitted in the second trial that was found to be error. But again, that involves a different question. That's a constitutional question, and notwithstanding the strength of the evidence in this case, notwithstanding the April 21 statement would have been sufficient for the law, the defendant to testify as he did, and he asserted self defense. Although defense counsel didn't address it in her oral argument regarding the question regarding emails to by Mr. Gifford and that did not also see see Mr. Adams, those emails were submitted to the court to review in camera, whether the defendant's concerns about what they contained were valid. The court reviewed it and made its determination based on its discretion under Rule 16 that they did not have to be produced to the defendant that the defendants. In fact, concerns weren't valid. So it was reviewed in camera, and the district court, as it's authorized to under Rule 16 limited the discovery that was within its discretion. It did not harm the defendant, and it should not be grounds for overturning the verdict and sentence against the defendant. District Court said that those communications between the former counsel and the prosecutor didn't belong to this defendant. Do you agree with that. Your Honor. If it did belong to the defendant, arguably under Rule 16 and they were produced on their creation, and that requiring us to produce it again as a step too far. So, notwithstanding there, why is that a step too far. I mean if their communications that were between her former counsel and the government and why is it a step too far to produce them again, she doesn't have access to them. Well, your honor that we submit the defendant did have access if they belong to him, his attorney, who was his attorney has the ability to give it to his new attorney. If there's a dispute between those two that doesn't involve the government. And notwithstanding, the district court. Yeah, I'm just, I'm just questioning whether that was really necessarily true that communications, regardless of whose file they are in the communications between a prosecutor and an attorney defense counsel or don't don't belong to the defendant, almost as though the defendants not and he's not entitled to them. Well, your honor the district court only spoke to his entitlement under the rules of discovery, the order leaves on addressed whether he's entitled to him under other means or other requests. It was simply the defendants motion to compel their production under Rule 16 of that order addressed, and the district court was within his discretion to do that. I am down to about 13 seconds at this point. If there are no other questions I'd yield my time and thank you. Thank you, Council. There is some rebuttal time left. Yes, your honors, I would like to start with answering just Kelly and judge Murray's question the affidavit is volume 1612, and then the 605 to 22 and 38 to 42 have that material. The important part about the government's assessor interpretation of 1867 a is it's complete disregard of the middle sentence. This subsection says in criminal cases before the word your examination begins, or within seven days after the defendant discovered or could have discovered by the exercise of diligence. The grounds thereafter. They can, whichever is earlier, whichever is earlier. No, your honor. That is the issue. It says, or within seven days after the defendant discovered or could have discovered by the exercise of diligence, and that is important because if it assumes that if you knew before what do you have to raise it. It ties the point of discovery to the point of raising, but if you discover during the war do which is this case here, then you have seven days to raise it in writing and that's exactly what happened here. They discovered during the war do right before the war do the first day of the trial and they raise it within seven days. So that was complete compliance and the government's gesture interpretation would completely render this middle class meaningless. And as to the caravan whether the caravan does say whichever it has to raise the jury act challenge before the law dear examination begins, or within seven days after discovered, or could have been discovered, whichever is earlier. Whichever is earlier, so it doesn't matter because the earliest part was during the war do right. So there was no other point of discovery, the government is not claiming that this was that the, and the oral motion was the only thing that could have been undone on that day. So, to say that if you discover it during the war do you shall find a written affidavit that has all this information, while you're in the middle of the trial is impractical so the only way that you can read that whichever is earlier, is the point of timing as to, or could have discovered seems to read pretty clearly to me but you're basically just you're, you're twisting that completely around and saying it doesn't mean what it says, I'm just looking at the practicality of how can I'm not talking about the practicality I'm talking about what the statute is that it doesn't matter if the caravan of the cars that was following the defendant had 15 cars or 25 cars. The point is that the prosecution, the prosecutor was the last car in that caravan. So they were all following the defendant, heading to the body, and it is undisputed that the court found that it believed that the defense counsel's count of whether they were in plea negotiation. That is an undisputed piece of this analysis and the government has not filed a cross appeal of that finding of the court. So that's okay. Your time has expired and let you wrap up and look like we were going to keep going there. So, yes, I stand on our arguments on the third on the briefing on the third argument. Thank you. Okay, thank you counsel the cases submitted and counselor excuse.